ANDREW HECHTMAN, ADMINISTRATOR (ESTATE
OF ARLENE SAVITSKY) *v.* ALLAN SAVITSKY
(AC 20072)

Landau, Dranginis and Dupont, Js.

Argued January 18—officially released April 10, 2001

*Steven D. Jacobs,* for the appellant (plaintiff).

*Edward Maum Sheehy,* with whom, on the brief, was *Michael R. Brandt,* for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Andrew Hechtman, is the executor[1] of his mother's estate and appeals from that portion of the trial court's judgment that found that the defendant, Allan Savitsky, had not committed waste or negligence as a life tenant. The plaintiff claims that the court improperly (1) determined that the defendant was not obligated to pay the interest due on a home equity loan that encumbered the property and (2) considered matters extrinsic to the will and outside the record. We affirm the judgment of the trial court.

The following facts are necessary to our resolution of this appeal. The defendant married the testatrix, Arlene Savitsky, on August 11, 1985. They executed an antenuptial agreement (agreement) on August 5, 1985. The agreement specifically provided: "[T]he Parties to this Agreement desire that neither of them shall be responsible for the debts of the other which might have accumulated to the time of signing of this Agreement, nor for any debts contracted hereafter unless both Parties have agreed to assume the same . . . ." The agreement also provided that each party would have the "full right to own, control and dispose of his or her separate property" and "each of the Parties is to have the full right to dispose of and sell any and all real or personal property now or hereafter owned by each of them . . . ."

During the marriage, the defendant moved into the testatrix's residence at 130 Sunburst Road in Bridge-port. Before and during the marriage, the residence at

---

[1] The complaint describes the plaintiff as administrator rather than as executor, as does the case caption. The plaintiff was, in fact, named executor under his mother's last will and testament.

130 Sunburst Road remained the sole property of the testatrix. After the testatrix's death, the defendant paid the taxes, insurance, utilities and maintenance expenses for the property.

On May 25, 1995, the testatrix signed an equity credit line note with People's Bank in the amount of $50,000. She borrowed $31,000 against that credit line. She secured the note with a mortgage on the premises at 130 Sunburst Road. The note and the mortgage deed to the bank contain only the testatrix's signature as obligor, and the testatrix paid any and all interest payments on that obligation until her death.

On April 28, 1997, the testatrix executed a will that revoked and extinguished any prior will or codicil. The will made the following devise of the real estate, improvements and furnishings at 130 Sunburst Road: "I give and devise my house and real estate located at 130 Sunburst Road, Bridgeport, Connecticut, together with all of the furniture and furnishings located therein, to my son, ANDREW PAUL HECHTMAN, of Cheshire, Connecticut, subject to the right of my husband, ALLAN SAVITSKY, to live, alone, in the house for the rest of his life, and so long as he remains unmarried. My husband's right to live in the home shall terminate if he should remarry or if he should take in a live-in companion. I further direct that so long as my husband occupies said home, he shall be responsible for and pay all expenses relating to the use and maintenance of said house, which will include, but [are] not limited to, taxes, insurance, utilities and repairs."

Paragraph eight of the will devised the "rest, residue and remainder of [the] estate to [her] son, ANDREW PAUL HECHTMAN, of Cheshire, Connecticut, to be his absolutely." Paragraph nine specifically incorporated by reference the agreement that the parties entered into in August, 1985. The testatrix died on June 19, 1997.

On November 17, 1997, the plaintiff instituted an action against the defendant for conversion, negligence and waste. On July 21, 1999, the court rendered judgment in favor of the defendant.[2] This appeal followed. We will provide additional facts as necessary.

## I

We first must address the issue of mootness, which arose at oral argument and concerns a foreclosure action of the mortgage. The question is whether the withdrawal of the foreclosure action rendered the present case moot. Mootness implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. See *Fiddelman* v. *Redmon*, 59 Conn. App. 481, 483, 757 A.2d 671 (2000). The following facts relate to whether we have jurisdiction to hear the present case.

In an independent cause of action dated March 4, 2000, PNC Bank, N.A. (bank), the assignee of People's Bank, sought strict foreclosure of the mortgage that the testatrix had executed to secure the home equity loan, claiming that the installments of principal and interest on the loan had not been paid.[3] We take judicial notice of the pleadings in that action. See *Lowe* v. *Lowe*, 47 Conn. App. 354, 360, 704 A.2d 236 (1997).

The bank named other lienors and the present parties as defendants. The bank sued the defendant in the present case, Savitsky, as a life tenant. There was no allegation, however, as there is in the present case filed by the plaintiff, Hechtman, that Savitsky had failed to make payments on the loan. On April 6, 2000, the plaintiff in

---

[2] The plaintiff has not appealed from the court's judgment in favor of the defendant on the conversion count.

[3] The mortgage foreclosure case is titled *PNC Bank, N.A.* v. *Hechtman*, Superior Court, judicial district of Fairfield, Docket No. 0372829S (March 4, 2000).

the present case individually and as executor of the estate filed an answer and special defenses. The special defenses did not allege that Savitsky was liable for the payments.

On May 17, 2000, the court defaulted Savitsky for failure to disclose a defense. On July 13, 2000, the bank moved for summary judgment against Hechtman, individually and as executor of the estate, as to liability only. Hechtman, individually and as executor, filed a memorandum in opposition to the bank's motion for summary judgment and in support of his own motion for summary judgment against the bank. That memorandum alleged that he was not individually liable, nor was the estate liable, for payment of the loan's finance charges. According to the opposition memorandum, Savitsky, as life tenant, was liable.

On October 13, 2000, Savitsky filed a four count cross claim against Hechtman in the foreclosure action, alleging that Hechtman, as an individual, had committed waste by failing to make payments of principal and interest on the loan. The cross claim references the trial court's judgment in the present case, which held that Savitsky was not obligated to pay interest or principal on the loan. The cross claim also alleged that Hechtman, as administrator of the estate, had breached a fiduciary duty by failing to make payments on the loan; that Hechtman, as an individual, had violated the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; and that Hechtman, both individually and as administrator of the estate, had intentionally inflicted emotional distress.

On October 20, 2000, the court granted the bank's motion for summary judgment as to liability because no party disputed that the mortgage was in default and because the issue of liability for payment of the underlying promissory note was irrelevant to the fore-

closure action. On January 3, 2001, the bank withdrew its action as to all defendants. On January 8, 2001, Savitsky objected to the bank's withdrawal of the action because of his pending cross claim against Hechtman. The court never ruled on the objection or the cross claim.

Counsel for the plaintiff in the present case disclosed at oral argument to this court that the plaintiff agreed to satisfy the outstanding debt and to bring the loan current to avoid foreclosure. The plaintiff has continued to make those payments to stave off foreclosure.

The plaintiff's agreement to make the payments raises the question of whether his actions have negated the existence of a controversy and have rendered the appeal seeking to discern the party responsible for the debts purely an academic exercise. In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. See *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765, 627 A.2d 367 (1993); *Phaneuf* v. *Commissioner of Motor Vehicles*, 166 Conn. 449, 452–53, 352 A.2d 291 (1974).

The record from the foreclosure case does not contain any information concerning the plaintiff's agreement to make the loan payments in the future. There is no indication that the plaintiff stipulated that he was liable for the debt or entered into an otherwise legally enforceable agreement that established his liability for the loan. Indeed, he disputed his liability in the foreclosure action. Reversal of the trial court's judgment in this case might relieve the plaintiff of any future liability as to the loan payments, thereby raising the possibility of collateral legal consequences. If we determine that the plaintiff had no legal obligation to pay either principal or interest on the loan during the defendant's life tenancy, the plaintiff might have a separate cause of action against the defendant for reimburse-

ment. Moreover, affirmance by this court of the trial court's judgment might have the collateral consequence of affecting the defendant's outstanding cross claim in the foreclosure case. We conclude that practical relief can follow from a determination of this appeal, and that we, therefore, have jurisdiction. See *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 594, 538 A.2d 1065 (1988). We turn now to the issues on appeal.

## II

The plaintiff first claims that the court improperly concluded that the defendant was not obligated to pay the interest due on the home equity loan that encumbered the property in which the defendant has a life estate interest. The plaintiff maintains that the testatrix's will evinces her intention to have the defendant assume all obligations of the life estate, as well as its benefits. Moreover, the plaintiff claims that the general intent of the will must prevail over the residuary language in the will. The plaintiff also argues that the court's judgment contravenes public policy.

The defendant responds that the court properly concluded that the testatrix did not intend to obligate the defendant to pay the interest due on the home equity loan during his life tenancy. The defendant argues that the incorporation by reference of the antenuptial agreement in the will demonstrates the testatrix's intention to negate the general rule that a life tenant is responsible for interest on encumbrances on the estate. We agree with the defendant.

## A

Our standard of review is well settled. The construction of a will presents a question of law, a question that we determine in light of the facts found by the trial court or from those facts that are undisputed or indisputable.

*Connecticut National Bank & Trust Co.* v. *Chadwick*, 217 Conn. 260, 266, 585 A.2d 1189 (1991). The issue presented concerns the intent of the testatrix as expressed in the language of the will, and we, therefore, invoke a plenary review of whether that language supports the court's conclusion. See id., 266–67.

In its memorandum of decision, the court correctly noted that the law generally obligates a life tenant to pay interest on a mortgage secured by the subject property of the life estate. See *Hayward* v. *Plant*, 98 Conn. 374, 387, 119 A. 341 (1923). A specific will provision can override or supersede, however, the general rule. *"In the absence of provision in statute, will, or other instrument,* [the authorities] are in agreement in holding it to be the duty of the life tenant to pay interest upon encumbrances upon the estate from the decease of the testator." (Emphasis added.) Id., 388.

A basic tenet of will construction requires a court to examine the entirety of the will in divining the testatrix's intent. *Hartford National Bank & Trust Co.* v. *Devitt*, 145 Conn. 384, 388, 143 A.2d 441 (1958). The resolution of this case, therefore, hinges on the interpretation of the testatrix's intent concerning the life estate in light of the entire will, specifically, in light of the incorporation by reference of the antenuptial agreement. We believe that the plaintiff's argument contravenes the principle that requires us to read the will as a whole "to discover whether it discloses an underlying intent which should be considered in finding the meaning to be accorded to the particular language under consideration." Id.

Bound by this principle, we read the conveyance of the life estate in conjunction with the language of the agreement, which agreement the testatrix specifically incorporated by reference. As previously noted, the will

states that the defendant "shall be responsible for and pay all expenses relating to the use and maintenance of said house, which will include, but [are] not limited to, taxes, insurance, utilities and repairs." We must not ignore, however, the language of the antenuptial agreement in discerning the testatrix's intent. The agreement, which the testatrix executed prior to the will, explicitly provided that each party to the marriage would be responsible for his or her own individual debts acquired both before and during the marriage, unless both parties agreed otherwise. The agreement also provided that each party to the marriage would have the "full right to own, control and dispose of his or her own separate property . . . ."

The testatrix alone signed the credit note for the home equity loan and the mortgage deed. The testatrix alone made the payments on the loan until her death. The testatrix already had entered into the antenuptial agreement with her husband when she executed the will, and she incorporated that agreement into her will. She could have expressly provided in the language conveying the life estate that the defendant would be responsible for the payments on the loan, but most likely did not because of the provisions of the antenuptial agreement. Although the will enumerates, albeit nonexhaustively, the obligations of the life tenant, there is no reference to the home equity loan payments.

The agreement demonstrates the testatrix's intention not to obligate the defendant to pay any debt that the testatrix contracted for after the date of the agreement's execution, and the will incorporates by reference the intention of that agreement. We, therefore, conclude that the will, when read in toto, relieves the defendant of any obligation the law might have imposed on him otherwise to pay the interest on a home equity loan

secured by a mortgage on the subject property in which he has a life estate interest.[4]

## B

The plaintiff's argument that the "general intent" of the will must prevail over the "residuary language" does not properly characterize the will's provisions. The agreement, which was incorporated by reference, is not residuary language. Residuary language expresses an intention to dispose of a testatrix's entire estate and to avoid intestacy.[5] *DiSesa* v. *Hickey*, 160 Conn. 250, 259, 278 A.2d 785 (1971). The general intent of the testatrix in this case, derived from the will as a whole and thus inclusive of the agreement, as we concluded previously, was to convey a life estate to the defendant without obligating him to pay any debts that the testatrix acquired before or during the marriage. We, therefore, affirm the court's decision that the defendant is not responsible for the payments on the home equity loan.

## C

The plaintiff also argues that public policy reasons should obligate the defendant to pay the interest on the loan and that the court's judgment contravenes public policy. The alleged public policy reasons are that courts should avoid sowing family discord, should render logical decisions and should not construe a will so as to destroy a vested remainder interest in property. The trial court in this case did not discuss these issues, nor do we. We fail to understand how the opinion fosters family discord, why the decision is illogical or why the judgment destroys the plaintiff's remainder interest in the property.

---

[4] In light of our conclusion, we do not reach the issue of whether a home equity loan constitutes the type of encumbrance on an estate for which a life tenant might be responsible.

[5] Paragraph eight of the will in the present case constitutes the residuary language.

## III

The plaintiff also claims that the court improperly considered matters extrinsic to the will and outside the record and, therefore, abused its discretion. We disagree.

The plaintiff specifically cites that portion of the memorandum of decision where the court draws a distinction between a mortgage where the mortgagor uses the proceeds to acquire the subject property and the type of mortgage in the present case. He claims that the court speculated as to what the testatrix did with the proceeds of the loan. The plaintiff appears to argue that the court abused its discretion when, in its memorandum of decision, it commented on the fact that "people borrow money on home equity lines secured by a mortgage so that the interest payments are deductible for income tax purposes." Immediately after the comment, the court stated that a home equity line of credit loan is no different than any unsecured loan that the testatrix could have obtained during the marriage and that, therefore, the court should treat it in accordance with the antenuptial agreement.

We find the plaintiff's argument unavailing for two reasons. First, the court did not abuse its discretion in recognizing the difference between the two types of mortgages. The distinction it drew does not rise to the forbidden level of information obtained individually or unofficially through personal knowledge or observations of the judge. See *State* v. *Tomanelli*, 153 Conn. 365, 369, 216 A.2d 625 (1966). Second, we do not discern any effect that that fact had on the outcome of the case. The court was merely opining as to the reasons the testatrix may have secured the loan, which opining did not affect the court's ultimate decision. The court did not abuse its discretion in recognizing that a distinction exists between a home equity loan and a loan provided

for the initial purpose of purchasing a home. See *Gray Line Bus Co.* v. *Greater Bridgeport Transit District,* 188 Conn. 417, 424, 449 A.2d 1036 (1982).

The judgment is affirmed.

In this opinion the other judges concurred.