# YALE-NEW HAVEN HOSPITAL, INC. *v.* HELEN JACOBS, EXECUTRIX (ESTATE OF BEATRICE YOKELY), ET AL.
## (AC 20442)

Foti, Mihalakos and Dupont, Js.

Argued February 16—officially released June 26, 2001

*Tara M. Barbara*, with whom, on the brief, was *Patrick M. Birney*, for the appellant (plaintiff).

*Lawrence A. Dubin*, for the appellees (defendants).

*Opinion*

MIHALAKOS, J. The plaintiff, Yale-New Haven Hospital, Inc., appeals from the judgment rendered by the trial court dismissing its appeal from an order of the Probate Court for the district of New Haven. At issue is the Probate Court's order permitting the executrix of the estate of Beatrice Yokely to repair real property of the estate using estate funds and to distribute the remaining funds to creditors other than the plaintiff, which has a claim pending against the estate for medical bills incurred by Yokely (the decedent) during her last sickness. On appeal, the plaintiff claims that expenditures for repairs that are unnecessary to preserve or conserve the estate do not constitute "expenses of settling the estate" and, therefore, are not assigned second priority pursuant to General Statutes § 45a-365.[1] Consequently, the plaintiff argues, the Probate Court misapplied § 45a-365 in declining to assign the plaintiff's claim priority over the proposed expenditure for the repairs. Alternatively, the plaintiff claims that the Probate

[1] General Statutes § 45a-365 provides: "Claims, expenses and taxes in the settlement of a decedent's estate shall be entitled to preference and payment in the following order of priority: (1) Funeral expenses; (2) *expenses of settling the estate*; (3) *claims due for the last sickness of the decedent*; (4) all lawful taxes and all claims due the state of Connecticut and the United States; (5) all claims due any laborer or mechanic for personal wages for labor performed by such laborer or mechanic for the decedent within three months immediately before the decease of such person; (6) other preferred claims; and (7) all other claims allowed in proportion to their respective amounts." (Emphasis added.)

In its brief, the plaintiff refers to another statute, General Statutes § 45a-392, which also provides an order of payment of claims against a decedent's estate; however, § 45a-392 should be applied only if the decedent died prior to October 1, 1987. Because the decedent in the present case died on or after October 1, 1987, General Statutes § 45a-365 applies, and it, instead, provides the basis for our decision.

Court's order permitting the expenditure was improper because it impliedly authorized the executrix to waste estate assets. We are persuaded by the plaintiff's initial claim and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal and are undisputed. The decedent died on February 18, 1994. Thereafter, an estate was opened for the decedent in the Probate Court for the district of New Haven. The decedent's sister, Helen Jacobs, was appointed executrix as directed by the decedent's will. On or about April 25, 1994, the plaintiff presented a claim against the estate in the amount of $77,455.22, for medical bills that the decedent had incurred in September, 1993, during her last sickness.

On or about June 8, 1994, the executrix filed in the Probate Court an inventory and appraisal of the decedent's estate. Those documents indicated that the estate was worth $122,000 and that it consisted of two houses in New Haven. The first house, located at 535-537 Winchester Avenue, was appraised at $78,000, and the second, located at 50 Thompson Street, was appraised at $44,000. Shortly after the executrix filed the inventory and appraisal, a fire destroyed the house on the Winchester Avenue property. It was insured against loss by fire, however, and the estate received indemnification in the amount of $87,733.12. On or about May 31, 1995, the plaintiff amended its claim, reducing the amount requested to $75,484.17.

On October 19, 1995, the Probate Court conducted a hearing on the account of the estate. During the hearing, the executrix reported that $84,729.79 of the insurance proceeds remained. She also requested the Probate Court's permission to allocate those proceeds toward rebuilding the house on Winchester Avenue and renovating the house on Thompson Street, which was

not in compliance with the New Haven housing code. Last, the executrix indicated to the Probate Court that she wanted the beneficiaries of the decedent's estate to live in the two houses.[2] Before concluding the hearing, the Probate Court approved a partial distribution in the amount of $28,268.89 for the following purposes: (1) cleaning and storage fees ($5525.25); (2) property insurance ($257); (3) attorney's fees ($8125); (4) property taxes ($5827.76); (5) utilities ($5752.86); (6) Fleet Finance mortgage ($2249.80); and (7) Kasden/Elm City Fuel ($631.22). The Probate Court recommended that the executrix file a separate motion addressing the distribution of the remaining proceeds, which totaled $56,380.90. Later that day, the plaintiff filed a motion to stay the partial distribution. On or about October 31, 1995, the executrix filed a motion for permission to allocate the remaining $56,380.90 toward rebuilding or renovating the two properties.

On November 30, 1995, the Probate Court conducted a hearing, during which it granted the executrix's motion for permission and denied the plaintiff's motion to stay the partial distribution. The Probate Court did stay, however, the allocation of the remaining $56,380.90 to allow for an appeal by the plaintiff.

On December 14, 1995, the plaintiff appealed to the Superior Court. On appeal, the plaintiff claimed, inter alia, that the Probate Court should not have allocated any of the insurance proceeds toward rebuilding the house on Winchester Avenue or renovating the house on Thompson Street because those proposed expenditures did not constitute "expenses of settling the estate" and, thus, did not have priority over the plaintiff's claim due for the last sickness of the decedent. Because no record was made of the underlying probate proceedings, the

---

[2] The beneficiaries, all of whom are older than eighteen years of age, are the other defendants in this action.

trial court conducted a trial de novo. See *Andrews* v. *Gorby*, 237 Conn. 12, 16, 675 A.2d 449 (1996). At the conclusion of the trial, the court, relying on *Horton* v. *Upham*, 72 Conn. 29, 43 A. 492 (1899), dismissed the plaintiff's appeal.[3] This appeal followed. Additional facts and procedural history will be presented as necessary.

First, we must determine whether a repair[4] to property of an estate may constitute "expenses of settling the estate" pursuant to § 45a-365.[5] That is a question of statutory interpretation, and, therefore, our review of that issue is plenary. See *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 690, 755 A.2d 850 (2000).

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal

---

[3] Specifically, the court relied on the following statement in *Horton* v. *Upham*, supra, 72 Conn. 31: "The insurance money which has been collected goes as the land goes, and is to be treated as real estate." As discussed later in this opinion, we conclude that this rule is limited in scope and does not apply to the present case.

[4] In Black's Law Dictionary (6th Ed. 1990), "repair" is defined as follows: "To mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction. . . . The word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be." (Citation omitted.) We adopt that definition for the purposes of this opinion.

[5] See footnote 1.

quotation marks omitted.) *Winchester* v. *Northwest Associates*, 255 Conn. 379, 386, 767 A.2d 687 (2001).

Neither the General Statutes nor the Public Acts contain a definition of the phrase "expenses of settling the estate." Common-law principles, however, provide significant insight. In *Corbin* v. *Townshend*, 92 Conn. 501, 506, 103 A. 647 (1918), our Supreme Court stated: "Administration expenses embrace any expense incurred by an executor or administrator in the care, preservation and conservation of the assets of the estate, in converting the assets, and in paying the debts and legacies, and also all expenses incurred by operation of law and in turning over the assets remaining to the residuary legatees or distributees." Applying the foregoing principle, we hold that a repair to property of an estate can constitute an expense of settling the estate pursuant to § 45a-365 only if it is (1) necessary to conserve[6] the overall value of the estate or (2) ordinary and necessary to preserve[7] the property in question. Second, in applying that rule to the present case, we must determine whether the challenged expenses permitted by the court, namely, the costs of repairing the two houses, constitute expenses of settling the estate pursuant to § 45a-365.[8] We conclude that they do not.

---

[6] In Black's Law Dictionary (6th Ed. 1990), "conserve" is defined as follows: "To save and protect from loss or damage." We adopt that definition for the purposes of this opinion.

[7] In Black's Law Dictionary (6th Ed. 1990), "preservation" is defined as follows: "Keeping safe from harm; avoiding injury, destruction, or decay; maintenance. It is not creation, but the saving of that which already exists, and implies the continuance of what previously existed." We adopt that definition for the purposes of this opinion.

[8] It is important to note that the real property of the decedent's estate was *not* specifically devised. Consequently, General Statutes § 45a-428, which requires that the devisees of real property receive personal notice of the pendency of an application for a decree authorizing the sale or mortgage of the property, does not apply to the present case.

The following additional procedural history is relevant to our inquiry. During the trial de novo, Joseph Perrelli, a real estate appraiser, testified on behalf of the plaintiff. Perrelli testified that the estimated reconstruction cost of the house on Winchester Avenue was $190,000, which was "slightly in excess of $50 per square foot." Perrelli further testified that if the house were reconstructed, it would have an estimated market value of only $90,000 because of "external obsolescence." Regarding the house on Thompson Street, Perrelli testified that the estimated cost of renovating it, including "bring[ing] it up to code," was $64,300 and that the house, if renovated, would have a market value of approximately $50,000. No one else testified at the trial. Additionally, three exhibits were admitted into evidence: A copy of the plaintiff's claim against the estate, Perrelli's summary appraisal report concerning the property on Winchester Avenue and Perrelli's summary appraisal report concerning the property on Thompson Street. Perrelli's testimony was consistent with the information contained in his reports.

Thereafter, the court issued its memorandum of decision, which stated in relevant part: "The plaintiff urges that the sum of $53,360.90 be used for the payment of its bill for the decedent's last sickness.

"The case of *Horton* v. *Upham*, [supra, 72 Conn. 29], was a suit to determine the construction of a will. The testator left a house and outbuildings to his grandson. The buildings were destroyed by fire, and the administrator collected the amount of the policy.

"The court ruled: 'The insurance money which has been collected goes as the land goes, and is to be treated as real estate.'

"The court held that the Superior Court was correct. See *Estate of Freud*, 131 Cal. 667, 63 P. 1080 (1901).

"The appeal is dismissed."

The court neither evaluated Perrelli's testimony nor addressed whether the repairs constituted expenses of settling the estate.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Gateway* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995); see also Practice Book § 60-5. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 345–46, 736 A.2d 824 (1999). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Gateway* v. *DiNoia*, supra, 229; see also Practice Book § 60-5.

We have reviewed the record of the trial court, and we conclude that it did not make findings that are relevant to determining whether the repairs constituted expenses of settling the estate. Our review of the record reveals, however, that none of the evidence presented indicates that the contemplated repairs were either (1) necessary to conserve the overall value of the decedent's estate or (2) ordinary and necessary to preserve the properties in question. Therefore, assuming arguendo that the court had found that the repairs were either necessary to conserve the estate or ordinary and necessary to preserve the properties in question, we

would be obligated to rule that that finding is clearly erroneous because no evidence in the record supports it. See *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, supra, 250 Conn. 345–46. On the contrary, the evidence, which included Perrelli's testimony and his appraisal reports, indicates strongly that the repairs permitted by the Probate Court, which totaled $56,380.90, were not necessary to conserve the overall value of the decedent's estate. Additionally, the evidence indicates strongly that the repairs contemplated for either the Winchester Avenue property or the Thompson Street property were not ordinary. Those observations lead us to conclude that the contemplated repairs do not constitute "expenses of settling the estate" pursuant to § 45a-365 and, thus, are not afforded second priority in the order of payment of claims against the estate. See footnote 1. Because it appears from the record that the plaintiff's claim is the only pending third priority claim, the plaintiff is entitled to the remaining insurance proceeds in partial satisfaction of its claim.

Last, we note that we are not persuaded by the executrix's counterargument that the court properly relied on *Horton* v. *Upham*, supra, 72 Conn. 29, in deciding to allocate a majority of the insurance proceeds toward repairing the two houses. In *Horton*, a testator's grandson brought an action to determine the appropriate construction of the testator's will. The will contained a "residuary clause [that] created an estate tail by implication in the testator's grandson [the appellant], both as to the real and personal estate, and gave the Congregational Society [the appellee] a contingent remainder in the real estate, dependent upon the decease of the first taker [the grandson] without leaving surviving issue . . . ." Id., 30–31. After the testator died, several buildings that the testator had owned at the time of his death were destroyed by fire. Those buildings were insured, and the administrator collected the amount of

the policy. The will did not account for that exigency, and litigation ensued.

Our Supreme Court concluded, inter alia, that the grandson was entitled to the possession and management of the insurance proceeds during his lifetime and that the proceeds would pass upon his death, as the buildings would have, had they not been destroyed. Id., 31–32. In so doing, our Supreme Court stated: "The insurance money which has been collected goes as the land goes, and is to be treated as real estate." Id., 31.

In the present case, the court improperly relied on that statement as support for its decision permitting the executrix of the estate to use fire insurance proceeds to pay for extraordinary repairs to two properties, one of which was not subject to a fire. That statement applies only when (1) the court is construing a will containing a specific devise, (2) at least some of the devised property was destroyed and (3) the estate is indemnified for the loss. In the present case, however, the proper construction of the decedent's will is not at issue. Additionally, the decedent's will does not contain a specific devise of the subject property, unlike the will in *Horton*. Thus, that statement appears to have little, if any, applicability in this setting. Moreover, even if we were to apply that statement to the present case, it appears to favor distributing the insurance proceeds to the creditors because the house on Winchester Avenue, had it not been destroyed by fire, would have been sold and the proceeds from that sale would have been distributed to the creditors in accordance with § 45a-365.

The judgment is reversed and the case is remanded with direction to render judgment ordering the executrix of the decedent's estate to distribute the remaining insurance proceeds to the plaintiff in partial satisfaction of its claim due for the last sickness of the decedent.

In this opinion the other judges concurred.