ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

October 28, 2003

Ms. Betty Jez                                    Opinion No. GA-0118
Austin County Auditor
One East Main                                    Re: Whether records management and preservation
Bellville, Texas 77418                           fees collected under section 118.011(b)(2), Local
                                                 Government Code, may be used to pay salaries in the
                                                 county clerk's office   (RQ-0055-GA)

Dear Ms. Jez:

You ask whether records management and preservation fees collected under section 118.011(b)(2) of the Local Government Code may be used to pay salaries of personnel in the county clerk's office.[1] *See* TEX. LOC. GOV'T CODE ANN. § 118.011(b)(2) (Vernon Supp. 2003). Your questions require us to interpret section 118.0216 of the same code, which restricts the fees' use. *See id.* § 118.0216(a), (d).

I.      **The Underlying Controversy**

In September 2002 the county clerk of Austin County sued Austin County commissioners, alleging that the commissioners court appropriated records management and preservation fees to pay the salary of an employee in the clerk's office contrary to Local Government Code section 118.0216. *See* Plaintiff's Original Petition, Application for Temporary Restraining Order, Application for Temporary Injunction, and Petition for Writ of Mandamus, *Gregor v. Austin County*, No. 2002V-0060 (155th Dist. Ct. Sept. 12, 2002). According to the clerk's petition, in August 2001, "before the 2001-2002 budget came into effect on October 1, 2001," the commissioners court "directed" her "to pay an employee in her office from" records management and preservation fees. *Id.* at 4. If she refused, the petition alleges, the commissioners court "would cut her budget and she would have to 'get rid of' an employee." *Id.* "Faced with this ultimatum[,] . . . [she] agreed to use $20,000.00 of the" records management and preservation fees for one year. *Id.* Again, "[d]uring budget hearings in 2002, and before the 2002-2003 budget" came into effect on October 1, 2002, the commissioners court "directed" the clerk "to either pay for an employee from records management fees or a position would be eliminated." *Id.* Rather than accede to this direction, the clerk calculated "the amount of time that one deputy works on specific records management projects" and subsequently authorized

[1]*See* Letter from Ms. Betty Jez, Austin County Auditor, to Honorable Greg Abbott, Texas Attorney General, at 1-2 (May 13, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

expending $7,000 from records management and preservation fees. *Id.* The commissioners court then reduced the clerk's office's funding. *Id.* at 5. *See generally* Plaintiff's First Amended Original Petition, Application for Temporary Restraining Order, Application for Temporary Injunction, Original Petition for Declaratory Judgment and Petition for Writ of Mandamus, *Gregor v. Austin County*, No. 2002V-0060 (155th Dist. Ct. Sept. 30, 2002).

Ultimately, the commissioners court and the clerk settled the lawsuit. *See* Settlement Agreement, *Gregor v. Austin County*, No. 2002V-0060 (155th Dist Ct. Oct. 24, 2002). In the settlement, the county clerk agreed to use $7,000 from records management and preservation fees in the 2002-2003 budget year. *See id.* at 1. The parties further agreed that a "neutral" county office, "such as the County Auditor," would request an attorney general opinion to determine whether records management and preservation fees may be used to pay salaries in a county clerk's office. *Id.* at 2. Given that "the controversy has been amicably compromised and settled," the court dismissed the lawsuit without prejudice. Agreed Order Dismissing Suit Without Prejudice, *Gregor v. Austin County*, No. 2002V-0060 (155th Dist. Ct. Nov. 13, 2002).

You accordingly ask whether records management and preservation fees may be used to pay salaries; if so, you then ask whether the amount of fees allocated must be proportional to the amount of records management and preservation services performed in the county clerk's office. You further ask how duties related to "specific records management and preservation, including for automation purposes" may be distinguished from those that are not. TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003); *see* Request Letter, *supra* note 1, at 1-2.

## II.    Statutes Pertaining to Records Management and Preservation Fees

Section 118.011 of the Local Government Code sets out a county clerk's fee schedule for non-court-related fees. *See* TEX. LOC. GOV'T CODE ANN. § 118.011 (Vernon Supp. 2003). Subsection (b)(2) permits a county clerk to "set and collect . . . from any person" who files a document a records management and preservation fee of $5 or less. *Id.* § 118.011(b)(2); *see id.* § 118.0216(b) (indicating that the fee must be paid when a non-court-related document is filed). The county commissioners court is required to deposit the fees into a records management and preservation fund and to "approve in advance any expenditures from the fund, which may be spent only for records management preservation or automation purposes in the county." *Id.* § 203.003(6) (Vernon 1999).

Section 118.0216(a) specifies that the records management and preservation fee collected under section 118.011 "is for the records management and preservation services" the county clerk performs after a document is filed and recorded in the clerk's office. *Id.* § 118.0216(a) (Vernon Supp. 2003). While subsection (a) articulates the fee's purpose, subsection (d) expressly limits the fee's use: "The fee may be used only to provide funds for specific management and preservation, including automation purposes."[2] *Id.* § 118.0216(d).

---

[2]Counties that adjoin an international boundary are subject to additional requirements, *see* TEX. LOC. GOV'T CODE ANN. § 118.0216(c), (e) (Vernon Supp. 2003), but as Austin County does not border Mexico, we do not address these additional requirements.

### III. Whether a County May Use Records Management and Preservation Fees to Pay Salaries of County Clerk's Office Employees

You ask first whether section 118.0216 excludes paying salaries in the county clerk's office "as a matter of law." Request Letter, *supra* note 1, at 1. You observe that "some level of human labor" is involved in managing and preserving the clerk's records. *Id.* at 4, 6. As you further observe, however, the statute does not expressly include salaries as a permissible use of the funds. *Id.* at 8.

You aver that the county clerk "originally based her contention that salaries were not an appropriate expenditure . . . upon" section 118.0216's language prior to its amendment in 2001. *Id.* at 4; *see* Act of May 22, 2001, 77th Leg., R.S., ch. 794, 2001 Tex. Gen. Laws 1542, 1542-44. That previous version of section 118.0216 permitted a county to use records management and preservation fees "only to provide funds for specific records preservation and automation projects." Act of May 26, 1991, 72d Leg., R.S., ch. 587, § 2, 1991 Tex. Gen. Laws 2104, 2105, *amended by* Act of May 22, 2001, 77th Leg., R.S., ch. 794, § 3, 2001 Tex. Gen. Laws 1542, 1542.

A 1993 opinion of the El Paso court of appeals and a 1998 opinion of this office considered what constitutes a records preservation and automation project for purposes of the pre-2001 statute. *See Hooten v. Enriquez*, 863 S.W.2d 522, 531-32 (Tex. App.–El Paso 1993, no writ); Tex. Att'y Gen. Op. No. DM-492 (1998) at 3-8. In the judicial opinion, *Hooten v. Enriquez*, a unanimous court concluded that section 118.0216 vests "exclusive authority to . . . designat[e] . . . exactly what constitutes record keeping, preservation, and automation in the county clerk's office" in the county clerk. *Hooten*, 863 S.W.2d at 531. A concurring opinion specifically considered the meaning of the word "project":

> It is not clear what the word "projects" means in its statutory context. The dictionary defines "project" among other things as "a planned undertaking" such as "a definitely formulated piece of research." WEBSTER'S NEW COLLEGIATE DICTIONARY (Merriam 1980). Another dictionary defines the word as "an undertaking requiring concerted effort." AMERICAN HERITAGE DICTIONARY (Houghton Mifflin 1985). Thus, whenever an employee of the county clerk is assigned a specific task or duty relating to records preservation, I would take it that the employee is engaged in a records preservation project.

*Id.* at 534 (Koehler, J., concurring). While the majority opinion did not expressly address the use of records management and preservation fees to pay salaries of employees in the county clerk's office, the concurring opinion suggested that a commissioners court's order designating a percentage of specific employees' salaries and benefits to be paid from records management and preservation fees was beyond the commissioners' discretion, implying that salaries and benefits were not part of a specific records preservation project. *See id.*

In Attorney General Opinion DM-492 this office interpreted *Hooten* to require that a county clerk and the commissioners court each play "a role" in deciding "how funds in a section

118.0216 account are used." Tex. Att'y Gen. Op. No. DM-492 (1998) at 6. Nevertheless, records management and preservation fees "may not be diverted from [their] statutorily assigned purposes to pay other expenses of the clerk's office." *Id.* at 8. Finally, the attorney general invited the legislature to define the phrase "specific records preservation and automation projects": "A legislative definition of this term as well as additional legislative clarification of section 118.0216 as to the use of the records management and preservation fee would greatly assist the counties in applying this provision." *Id.* at 9.

Then, in 2001 the legislature amended section 118.0216 by inserting the word "management" and changing the word "projects" to "purposes":

> The fee may be used only to provide funds for specific records *management and* preservation, *including for* [and] automation *purposes* [projects].

Act of May 22, 2001, 77th Leg., R.S., ch. 794, § 3, sec. 118.0216, 2001 Tex. Gen. Laws 1542, 1542. Changing the word "projects" to "purposes" had first been proposed in the previous session, less than one year after this office invited the legislature to clarify section 118.0216, in Senate Bill 1193. *See* Tex. S.B. 1193, 76th Leg., R.S., § 3 (1999). Senate Bill 1193 did not pass in 1999, but the change from the word "projects" to the word "purposes" was carried forward to House Bill 370 in the subsequent legislature. *See* TEX. HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 370, 77th Leg., R.S. (2001) at 3. In addition, House Bill 370 inserted the words "management and" between "records" and "preservation." *See* Act of May 22, 2001, 77th Leg., R.S., ch. 794, § 3, sec. 118.0216, 2001 Tex. Gen. Laws 1542, 1542. Neither amendment was discussed during committee hearings on the bills. *See Hearings on Tex. H.B. 370 Before the House Comm. on County Affairs*, 77th Leg., R.S. (Mar. 21, Apr. 4, and Apr. 9, 2001) (tape available from House Video/Audio Department); *Hearings on Tex. H.B. 370 Before the Senate Comm. on Intergov'tl Relations*, 77th Leg., R.S. (May 9 and May 11, 2001) (tape available from Senate Staff Services Office); *see also Hearings on Tex. S.B. 1193 Before the Senate Comm. on Intergov'tl Relations*, 76th Leg., R.S. (Mar. 24 and Apr. 7, 1999) (tape available from Senate Staff Services Office).

In our opinion, the 2001 amendments broadened the class of permissible uses for records management and preservation fees. Although the exact meaning of the phrase "specific records management and preservation, including for automation purposes" in section 118.0216(d) is not clear, TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003), the legislature plainly meant to alter the statute's meaning. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998) (stating that legislature, in enacting a statute, presumes the entire statute to be effective, as well as to provide a just and reasonable result).

First, the added term "management" increases the number of uses to which the fee may be put. Section 118.025(a)(2) of the Local Government Code defines the term "preservation" in the records archive context to mean a process that:

> (A) suspends or reduces the deterioration of public documents; or

Ms. Betty Jez - Page 5 (GA-0118)

(B) provides public access to the public documents in a manner that reduces the risk of deterioration, excluding providing public access to public documents indexed geographically.[3]

TEX. LOC. GOV'T CODE ANN. § 118.025(a)(2) (Vernon Supp. 2003); *see also id.* § 118.011(f), *as amended by* Act of May 28, 2003, 78th Leg., R.S., ch. 974, § 1, 2003 Tex. Sess. Law Serv. 2858, 2858 and Act of May 20, 2003,78th Leg., R.S., ch. 1275, § 2(105), 2003 Tex. Sess. Law Serv. 4140, 4146; *Yale-New Haven Hosp., Inc. v. Jacobs*, 779 A.2d 222, 227 n.7 (Conn. App. Ct.) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)) (defining the term "preservation" as "[k]eeping safe from harm; . . . saving . . . that which already exists"), *cert. denied*, 782 A.2d 1254 (Conn. 2001). By contrast, the phrase "records management" is defined for purposes of the Local Government Records Act to include numerous activities beyond preservation:

> "Records management" means the application of management techniques to the creation, use, maintenance, retention, preservation, and disposal of records for the purposes of reducing the costs and improving the efficiency of recordkeeping. The term includes the development of records control schedules, the management of filing and information retrieval systems, the protection of essential and permanent records, the economical and space-effective storage of inactive records, control over the creation and distribution of forms, reports, and correspondence, and the management of micrographics and electronic and other records storage systems.

TEX. LOC. GOV'T CODE ANN. § 201.003(13) (Vernon Supp. 2003); *see also id.* § 201.001 (Vernon 1999) (titling act).[4]

Second, the word "purposes" is broader than the word "projects." Ordinarily, the word "purpose" denotes "'the thing to be accomplished.'" *In re Okla. Capitol Improvement Auth.*, 2003 WL 21295711, 2003 OK 59, *3 (Okla. June 3, 2003) (stating that this definition of the word "purpose" comports with the word's "natural and ordinary meaning"). A "project," on the other hand, as *Hooten* suggests, is a discrete undertaking or endeavor. *See Hooten*, 863 S.W.2d at 534; *cf.* TEX. GOV'T CODE ANN. § 1509.151 (Vernon 2000) (defining the phrase "garbage reclamation project"); TEX. LOC. GOV'T CODE ANN. §§ 245.001(3) (Vernon 1999 & Supp. 2003), 392.002(6), 392.053(a), 393.003(4), 431.021(9) (defining the terms "project" and "housing project"); TEX. WATER CODE ANN. §§ 12.051(a)(1) (Vernon 2000) (defining "federal project"), 15.971(5), *as*

---

[3]Because section 118.0216 used the term "preservation" before section 118.025 was enacted, section 118.025's definition does not necessarily apply. *See* Tex. Att'y Gen. Op. No. DM-425 (1996) at 3 (stating that a construer may import a definition from one statute into a later enacted statute only); *cf. Brown v. Darden*, 50 S.W.2d 261, 263 (Tex. 1932) (stating that a word in one statute that is used, in the same sense, in a subsequently adopted statute on the same subject matter generally means the same thing). But in this situation, the statutes use the term "preservation" in the same sense, with the same purpose of saving existing records for historical reasons, so that section 118.025's definition can be applied to section 118.0216. *See* TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998) (directing that "[w]ords . . . that have acquired a technical or particular meaning . . . by legislative definition . . . shall be construed accordingly").

[4]We apply this definition to section 118.0216(d) because it was enacted prior to the adoption of section 118.0216, *see* Act of May 29, 1989, 71st Leg., R.S., ch. 1248, § 1, sec. 201.003(13), 1989 Tex. Gen. Laws 4996, 4998, and because both section 118.0216 and the Local Government Records Act pertain to government records.

*amended by* Act of May 20, 2003, 78th Leg., R.S., ch. 1275, § 2(142), 2003 Tex. Sess. Law Serv. 4140, 4148 (defining "project").

Despite these broadening amendments, the legislature retained the adjective "specific," which suggests that the legislature intended to limit the category of the fees' permissible uses to identifiable records management and preservation purposes only. The term "specific" commonly is synonymous with the term "distinguishable." *See In re Estate of Brown*, 922 S.W.2d 605, 607 (Tex. App.--Texarkana 1996, no writ) (describing a bequest as specific if it is described in a will with such particularity that the bequeathed property is distinguished from all of the testator's other property); *see also* XVI OXFORD ENGLISH DICTIONARY 157 (2d ed. 1989) (defining the term "specific" as constituting one of the characteristic features of a certain class of things); TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (directing a construer to define a statute's terms using the common definition).

Accordingly, records management and preservation fees may be used only for specific records management and preservation purposes. *See* TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003). Paying the salaries of personnel in the clerk's office who accomplish specific records management and preservation purposes, other than filing and recording documents, is not excluded as a matter of law.

Section 203.003(6), which restricts the purposes for which a county commissioners court may approve the use of records management and preservation fees to "records management preservation or automation purposes in the county," *id.* § 203.003(6) (Vernon 1999), should be construed identically. Logically, section 118.0216(d) and section 203.003(6) place the same restrictions on the use of the same fees. Given that section 118.0216(d) contains the legislature's most recent pronouncement on permissible uses of records management and preservation fees, we believe that section 203.003(6) should be read to mean the same thing as section 118.0216(d). *See* TEX. GOV'T CODE ANN. § 311.021(2), (3) (Vernon 1998) (directing a construer to presume that the legislature intended an entire statute to be effective and to provide a "just and reasonable result"); *cf. Commercial Standard Fire & Marine Co. v. Comm'r of Ins.*, 429 S.W.2d 930, 933 (Tex. Civ. App.–Austin 1968, no writ) (stating that inconsistencies in earlier enacted general statute must yield to later enacted special statute).

## IV.    Whether Records Management and Preservation Fees that are Allocated to Salaries Must be Allocated in "Some Proportion" to the Actual Accomplishment of Records Management and Preservation Purposes

You next ask whether, if section 118.0216(d) does not exclude paying salaries, the funds provided for salaries must "be allocated" in "proportion to the actual performance of Records Management 'services' and 'purposes.'" Request Letter, *supra* note 1, at 2.

Records management and preservation fees may be used to pay an employee in the clerk's office only to the extent that the employee's tasks further specific records management and preservation purposes. Using the fees for a purpose other than specific records management and preservation purposes is not permitted. *See* TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon

Supp. 2003); Tex. Att'y Gen. Op. No. DM-492 (1998) at 8 (reiterating that the records management and preservation fund "may not be diverted from its statutorily assigned purposes to pay other expenses of the clerk's office").

Thus, records management and preservation fees may be used to pay only that portion of an employee's salary that is proportional to the amount of time the employee spends on "specific records management and preservation, including automation purposes." TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003).

## V.    Activities of the County Clerk and Staff that Serve Specific Records Management and Preservation Purposes

Finally, you ask which activities performed by a county clerk's office serve specific records management and preservation purposes. See Request Letter, supra note 1, at 2. You note that "[i]t is difficult to imagine any" document processing or handling that, "once filed with the Clerk, . . . does not require some level of 'management and preservation.'" Id. at 6.

Records management and preservation fees generally may not be used to pay a clerk's office expenses associated with filing and recording a document. See TEX. LOC. GOV'T CODE ANN. § 118.0216(a) (Vernon Supp. 2003); Tex. Att'y Gen. Op. No. DM-492 (1998) at 7. As this office previously has suggested, when, in the course of the traditional method of recording a document, a clerk records an instrument in a "'well-bound book,' . . . records management and preservation . . . occur[s] later, for example, when the paper records are stored under conditions that will prevent deterioration or are copied in a more permanent media." Tex. Att'y Gen. Op. No. DM-492 (1998) at 7 (citing TEX. LOC. GOV'T CODE ANN. §§ 191.002, 193.001, 193.003). Thus, records management and preservation fees may not be used to pay the expenses, including the costs of an employee's time, incurred in recording an instrument in a book.

On the other hand, the fees may be used to pay records management costs, which include the activities listed in the Local Government Records Act's definition of the term, such as developing records control schedules; managing filing and information retrieval systems; storing inactive records; and managing records storage systems. See TEX. LOC. GOV'T CODE ANN. § 201.003(13) (Vernon Supp. 2003). Additionally, if a particular clerk's recording process includes microfilming documents as they are filed and recorded and the clerk has designated "the use of microfilm" as "'a specific records management and preservation [purpose],'" records management and preservation fees may be used to pay microfilming expenses including the salaries associated with that task. Tex. Att'y Gen. Op. No. DM-492 (1998) at 7 (quoting TEX. LOC. GOV'T CODE ANN. § 118.0216(d)).

Whether a particular activity of a clerk's office accomplishes specific records management and preservation purposes and therefore may be funded with records management and preservation fees is a question requiring factual determinations and is beyond the scope of an attorney general opinion. See Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that opinion process does not determine facts). In accordance with Hooten, it is the county clerk's duty to designate "exactly what constitutes record keeping, preservation, and automation in the county clerk's office" (as well as

records management). *Hooten*, 863 S.W.2d at 531. Given the county commissioners court must "approve in advance any expenditures" from the records management and preservation fund, TEX. LOC. GOV'T CODE ANN. § 203.003(6) (Vernon 1999), however, the county clerk and the commissioners court both play "a role" in determining the "specific records management and preservation, including for automation purposes" for which the county will spend records management and preservation fees. *See Hooten*, 863 S.W.2d at 531; Tex. Att'y Gen. Op. No. DM-492 (1998) at 6; TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003).

# S U M M A R Y

Under section 118.0216 of the Local Government Code, records management and preservation fees may be used to pay the salaries of employees in the clerk's office to the extent that the employees' activities accomplish "specific records management and preservation . . . purposes." TEX. LOC. GOV'T CODE ANN. § 118.0216(d) (Vernon Supp. 2003). It is the county clerk's duty to designate what constitutes specific records management and preservation purposes, although records management and preservation fees may not be expended without the county commissioners court's approval.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee