### JANE SACCU'S APPEAL FROM PROBATE
### (AC 26786)

McLachlan, Harper and Mihalakos, Js.

Argued June 2—officially released October 3, 2006

*Jack G. Steigelfest*, for the appellant (plaintiff).

*Robert W. Lynch*, for the appellee (defendant Richard Barretta).

### Opinion

MIHALAKOS, J. The plaintiff, Jane Saccu, appeals from the judgment rendered by the trial court dismissing her appeal from an order of the Probate Court for the district of Orange. The plaintiff claims that the trial court improperly upheld the Probate Court's order (1) granting the motion filed by the defendant Richard Barretta[1] for her removal as executrix of the estate of Giacomo Barretta, and (2) requiring her to reimburse the estate for the costs expended in connection with repairs to the roof, porch and stairs of the residential

---

[1] Although additional defendants were named in the trial court proceeding, Barretta is the only defendant on appeal, and we therefore refer to him as the defendant throughout this opinion.

property at 454 Howellton Road in Orange (property). We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The decedent, Giacomo Barretta, died on April 22, 2001, and was survived by five children, the plaintiff, the defendant, Charles Barretta, Louis A. Barretta and Marie Ryder. The decedent left a will that appointed the plaintiff as executrix of his estate. The will devised a life estate in the property to the plaintiff and Charles Baretta on the condition that they pay the real estate taxes and costs associated with ordinary maintenance and repairs of the property. A remainder interest in the property was devised to the defendant and Ryder. The will further provided that the residuary estate was to pass to the defendant, the plaintiff and Ryder.

Charles Barretta, who was living at the property at the time of his father's death, died in October, 2001. Shortly thereafter, the plaintiff occupied the property and undertook the task of substantially repairing the roof and rebuilding the porch and stairs. As executrix, she filed an accounting with the Probate Court in January, 2004, and a revised accounting in March, 2005, both of which indicated that she had used estate funds to pay for the repairs, as well as for the property taxes for the years 2001 through 2003. The defendant objected to the accounting and also filed motions to surcharge and to remove the plaintiff as fiduciary. On June 15, 2004, following a hearing on the defendant's objection and subsequent motions, the Probate Court found that the plaintiff had breached her fiduciary obligation as executrix when she used estate funds to pay for the repairs to the property and for the property taxes. The Probate Court ordered that the plaintiff (1) be removed as executrix and (2) reimburse the estate for the funds expended for the repairs and tax obligations. It also

ordered the plaintiff to file a revised accounting within one month. The plaintiff's motion to appeal from the Probate Court's order was granted on July 15, 2004. After reviewing the merits of the plaintiff's claim, the trial court issued its judgment in a memorandum of decision dated July 5, 2005, dismissing the plaintiff's appeal and adopting the order of the Probate Court. This appeal followed.[2]

I

The plaintiff's first claim on appeal is that the trial court abused its discretion when it removed her as executrix. Specifically, the plaintiff argues that no factual basis exists to support such removal because no finding was made by the court that the plaintiff, in her fiduciary capacity, presented a continuing risk to the estate. We agree.

We begin by setting forth the applicable standard of review. General Statutes § 45a-242 (a) governs the removal of fiduciaries and the grounds for such removal. Section 45a-242 (a) provides in relevant part: "The court of probate having jurisdiction may, upon its own motion or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, wastes the estate in such fiduciary's charge, or fails to furnish any additional or substitute probate bond ordered by the court . . . ."

"Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the

_____

[2] The plaintiff does not challenge that portion of the Probate Court's order requiring her to reimburse the estate for payment of taxes for the years 2001 through 2003. The plaintiff conceded that the estate should be reimbursed for these funds.

Probate Court. . . . On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision. . . . Our task, then, is to determine whether the trial court abused its discretion . . . ." (Citations omitted.) *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987).

Our law makes clear that the removal of the fiduciary of an estate is an extraordinary remedy to be applied only when necessary to protect against harm caused by the continuing depletion or mismanagement of an estate. *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 459, 460, 844 A.2d 836 (2004); *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 66. "[U]nderlying the rule . . . is the recognition that the decedent has specifically chosen the fiduciary for the specific purpose of administering his estate and managing the claims of persons with conflicting interests in the estate." *Cadle Co.* v. *D'Addario*, supra, 460. The party seeking removal of a fiduciary has the burden of showing that the estate's interests will suffer continuing harm if the fiduciary is not removed.[3] Id., 461.

The defendant proffers three arguments as to why the plaintiff has a continuing conflict of interest rendering her unfit to perform her duties to the estate. He maintains, first, that an inherent conflict exists in the plaintiff's dual role as executrix and life tenant. He also

[3] Our Supreme Court has compared this burden to that governing the removal of testamentary trustees: "In no case ought the trustee to be removed where there is no danger of a breach of trust, and some of the beneficiaries are satisfied with the management. Nor will a trustee be removed for every violation of duty, or even breach of trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy." (Internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 458.

claims that the ongoing conflict between himself and the plaintiff stemming from the present litigation constitutes sufficient grounds for the plaintiff's removal as executrix. The defendant further contends that the plaintiff's status as a debtor of the estate, resulting from the Probate Court's order requiring her to reimburse the estate for funds expended, created a continuing conflict of interest justifying her removal.

Despite the defendant's arguments as to why the plaintiff has a conflict of interest placing the estate's funds at ongoing risk, the court made absolutely no finding indicating that a continuing conflict of interest existed rendering the plaintiff unfit to perform her duties to the estate. Although the court found that the plaintiff improperly had utilized estate funds to pay for repairs and taxes associated with the property, "[i]n the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 67. The existence of a potential conflict of interest does not, of itself, mandate removal of the plaintiff as executrix. See id., 66. We conclude, therefore, that the trial court abused its discretion in removing the plaintiff as executrix without the finding that continuing harm to the estate would result if she was not removed as fiduciary.[4]

II

The plaintiff next claims that the trial court improperly concluded that the work performed to the roof, porch and stairs constituted ordinary maintenance and

[4] The cases cited by the defendant in support of his position that a continuing conflict of interest exists, *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 66–67, and *In re Andrews' Appeal from Probate*, 78 Conn. App. 429, 437, 826 A.2d 1260 (2003), are distinguishable because in those cases, the court made express findings that a continuing conflict of interest existed.

repairs to the property and that she, rather than the estate, was responsible for the cost. We disagree.

The decedent's will devised to the plaintiff a life estate, on the condition that she pay for "ordinary maintenance and repairs" to the property. The plaintiff contends that the repairs performed on the property do not fall under the category of ordinary maintenance and repairs as described by the will because the property was in poor repair when it passed to her as a life tenant, and the work performed was designed "to provide or construct improvements to the home necessary to preserve it and to permit it to be used for the life tenancy contemplated in the will . . . ."

The court concluded the following with respect to the plaintiff's obligation to pay for the repairs: "Apart from the specific provision in the will as to the life tenant's obligations for certain expenses, it is accepted law that the life tenant bear the expenses of maintaining the property by performing ordinary repairs to maintain the property in as good repair as when the tenant assumed possession. The replacement of the roof is an item of maintenance, for without a watertight roof, the property could be ruined, and other repairs of a more permanent nature done without the acquiescence of the remaindermen are at the tenant's expense."

Our law generally obligates a life tenant "to make the ordinary repairs required to remedy a presently existing condition of substantial disrepair that may have injured the property substantially or permanently . . . ." *Zauner* v. *Brewer*, 220 Conn. 176, 185, 596 A.2d 388 (1991); see also *State* v. *Goggin*, 208 Conn. 606, 608, 546 A.2d 250 (1988) (owner of life estate responsible for extensive repairs required at property). "A specific will provision can override or supersede, however, [this] general rule." *Hechtman* v. *Savitsky*, 62 Conn. App. 654, 661, 772 A.2d 673 (2001).

At issue is the interpretation of the language of the decedent's will requiring the plaintiff, as an express condition of her life estate in the property, to pay for "ordinary maintenance and repairs." "The construction of a will presents a question of law, a question that we determine in light of the facts found by the trial court or from those facts that are undisputed or indisputable." *Hechtman* v. *Savitsky*, supra, 62 Conn. App. 660. We therefore invoke a plenary review of whether the language of the will supports the court's conclusion that the plaintiff be responsible for the repairs to the roof, steps and porch of the property. See id., 661.

"The primary function and duty of the courts is to ascertain the intent of the testatrix and to carry it into effect. . . . The words used by the testatrix are to be interpreted according to their ordinary meaning unless the context or circumstances indicate a different meaning." (Citations omitted.) *Carr* v. *Huber*, 18 Conn. App. 150, 155, 557 A.2d 548 (1989). Webster's Third New International Dictionary defines "ordinary" as "occurring or encountered in the usual course of events," "not uncommon or exceptional," "not remarkable," "routine, normal . . . ." The word "maintenance" is described as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency." Webster's Third International Dictionary. The word "repair" is defined as "the act or process of repairing; restoration to a state of soundness, efficiency, or health." Id. The common understanding of "ordinary maintenance and repairs" to a property, therefore, indicates both (1) the upholding of the property in its present condition and (2) the basic restoration of the property to its normal state.

On the basis of this common understanding of "ordinary maintenance and repairs," we conclude that the testator did not intend through the use of the phrase

to supersede the common-law obligations of a life tenant. The phrase, essentially, mirrors the duties of a life tenant under our common law. Under common law, a life tenant is obligated both to make any ordinary repairs necessary to prevent the property from progressively declining to the point of deterioration and "to make the ordinary repairs required to remedy a presently existing condition of substantial disrepair . . . ." *Zauner* v. *Brewer*, supra, 220 Conn. 185. "In discharging the latter duty to make preventive ordinary repairs, [our courts have held that] if a new roof is needed, [the life tenant] is bound to put it on; if paint wears off, he is bound to repaint." (Internal quotation marks omitted.) Id.

There is no merit to the plaintiff's argument that the phrase "ordinary maintenance and repairs" should be interpreted in any way other than this commonly understood meaning.[5] Although the plaintiff argues that the work performed on the property constituted capital improvements and not ordinary repairs, the court impliedly rejected that argument when it concluded that the life tenant was responsible for the work performed on the property. The court's factual finding was that the work performed on the property was "ordinary" and, thus, the obligation of the life tenant was not clearly erroneous in light of the evidence presented at trial.[6] See *Yale-New Haven Hospital, Inc.* v. *Jacobs*, 64 Conn. App. 15, 23, 779 A.2d 222, cert. denied, 258 Conn. 916, 782 A.2d 1254 (2001); see also *Ferguson* v. *Rochford,*

---

[5] Because the phrase "ordinary maintenance and repairs" is not susceptible of different meanings, it was not necessary for the trial court to inquire into extrinsic facts to clarify the testator's intent. Compare *Zauner* v. *Brewer*, supra, 220 Conn. 180–82 (because word "surrender" has drastically different meanings comparing ordinary usage and technical legal meaning, court improperly failed to examine intent of testator in greater context).

[6] Evidence was presented that the roof was leaking, concrete was missing from the porch and stairs, the porch was "sunk in the ground" and the stairs were "very deteriorated."

84 Conn. 202, 204–205, 79 A. 177 (1911). Accordingly, we conclude that the court's order requiring the plaintiff to reimburse the estate for the costs of the repairs was not improper.

The judgment is reversed only as to the removal of the plaintiff as executrix of the decedent's estate and the case is remanded with direction to render judgment ordering that the plaintiff be reinstated as executrix. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.