******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# LARRY ALLEN MOORE *v.* CHELSEA BRYANT-MITCHELL
## (AC 47053)

Seeley, Westbrook and Wilson, Js.

*Syllabus*

The plaintiff appealed from the judgment of the Superior Court denying his appeal from the decree of the Probate Court removing him as executor of the estate of the defendant's decedent. The plaintiff claimed, inter alia, that the Superior Court improperly limited the scope of its review of his appeal and thus failed to allow him to present evidence to refute the defendant's allegations of misconduct against him and to challenge the admission of the decedent's will to probate. *Held*:

The Superior Court did not improperly limit the scope of its review of the plaintiff's appeal, as the court's jurisdiction extended only to the matter that the plaintiff challenged on appeal, which was the Probate Court decree removing him as the executor of the decedent's estate, and the requirement that the Superior Court conduct a trial de novo in a probate appeal did not mean that it could decide matters beyond what was appealed.

This court declined to review the plaintiff's inadequately briefed claim that the Superior Court precluded him from presenting evidence to refute the defendant's allegations of his misconduct in the administration of the estate, as the plaintiff did not identify any particular evidentiary ruling with respect to his claim or any specific erroneous factual findings that followed therefrom.

The Superior Court did not commit plain error by failing to overrule the Probate Court's admission of the decedent's will to probate, as the plaintiff did not appeal from the admission of the will to probate, and, thus, the Superior Court could not have overruled or reviewed the merits of a Probate Court decree that was beyond the scope of what was before it on appeal.

This court declined to review the plaintiff's claims that the Superior Court abused its discretion by quashing subpoenas he issued to nonparties who had knowledge about the execution and filing of the decedent's will, the plaintiff having abandoned those claims due to inadequate briefing.

This court declined to review the plaintiff's claim that the Superior Court abused its discretion by holding him responsible for the failures of attorneys he retained to assist with the administration of the estate, as he did not cite any legal authority or provide any legal analysis in support of his claim, which would fail even if it were reviewed, the Superior Court having found that the plaintiff was unable to administer the estate, failed to cooperate and follow the legal advice given by the attorneys he had engaged as counsel for the estate, was unwilling to comply with court orders and was motivated to pursue his self-interest over the interests of the estate and its beneficiaries.

Argued March 17—officially released August 12, 2025

Appeal from the decision of the Probate Court for the district of Norwalk-Wilton removing the plaintiff as executor of the estate of the defendant's decedent, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Edward T. Krumeich II*, judge trial referee; judgment denying the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Herbert I. Mendelsohn*, with whom was *John T. Irick*, pro hac vice, for the appellant (plaintiff).

*Lindsay T. Reed*, for the appellee (defendant).

*Opinion*

SEELEY, J. The plaintiff, Larry Allen Moore, appeals[1] from the judgment of the Superior Court removing him as the executor of the estate of the decedent, Clifton Dewayne Bryant. On appeal, the plaintiff claims that the Superior Court, in adjudicating his appeal from the decree of the Probate Court granting a petition filed by the defendant, Chelsea Bryant-Mitchell, to remove him as executor, improperly (1) limited the scope of its review to the Probate Court's removal of the plaintiff as executor and, as a result, failed to allow the plaintiff to present evidence (a) to refute the allegations concerning the plaintiff's alleged misconduct in administering the estate and (b) to challenge the decedent's will

---

[1] The plaintiff's appeal form indicates that he is challenging eleven different rulings of the Superior Court and "all other orders or decision[s] refusing to order enforcement of trial subpoenas." With the exception of the Superior Court's ruling removing him as executor of the decedent's estate and its rulings quashing certain subpoenas, which are addressed in this opinion, the plaintiff's appellate brief is devoid of any argument, claims or analysis regarding the other rulings listed on his appeal form. We, therefore, deem any such claims to be abandoned. See, e.g., *Deutsche Bank National Trust Co.* v. *Bertrand*, 140 Conn. App. 646, 648 n.2, 59 A.3d 864, cert. dismissed, 309 Conn. 905, 68 A.3d 661 (2013); *Corrarino* v. *Corrarino*, 121 Conn. App. 22, 23 n.1, 993 A.2d 486 (2010).

that had been admitted to probate, (2) failed to overrule the Probate Court's admission of the will to probate, and (3) prevented him from introducing evidence challenging the authenticity of the will. He also claims that the Superior Court abused its discretion in holding him, as a layperson, responsible for the failures of the attorneys he had retained on behalf of the estate to assist with the administration of the estate.[2] We affirm the judgment of the Superior Court.

The following facts, as found by the Superior Court or established by the record, and procedural history are relevant to our resolution of this appeal. The decedent died on January 13, 2020. The plaintiff is the decedent's cousin,[3] and the defendant is the decedent's widow. The decedent left a will, dated December 5, 2018, naming the plaintiff as executor of his estate (will). The will devised the decedent's interest in a limited liability company, 40 Wall Street, LLC (company), to the defendant, with her children as residuary beneficiaries, and provided that "[t]he business affairs" of the company "shall be managed by [the plaintiff]." The company is the owner of property at 40 Wall Street in Norwalk (property).

The will was admitted to probate,[4] and, on April 9, 2020, the plaintiff was appointed executor of the dece-

---

[2] The plaintiff also claims, for the first time in his appellate reply brief, that he was subjected to certain constitutional due process violations and that the "cumulative effect of the [Superior Court's] evidentiary rulings and the attorneys' failures to protect the plaintiff's interests constitute[d] plain error . . . ." We decline to review these claims because "[i]t is . . . a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Dearing* v. *Commissioner of Correction*, 230 Conn. App. 145, 168 n.9, 329 A.3d 988, cert. denied, 351 Conn. 910, 331 A.3d 158 (2025).

[3] Although the Superior Court, in its memorandum of decision, refers to the plaintiff as the decedent's cousin, the defendant testified that the plaintiff was a childhood friend of the decedent and that she was unaware of a blood relation between them.

[4] The plaintiff did not appeal from the Probate Court's decree admitting the will to probate.

dent's estate by a decree of the Probate Court. On June 3, 2020, the decedent's former business partner, Steven G. Ferguson, petitioned the Probate Court, claiming that he had a 50 percent ownership interest in the company. Following an evidentiary hearing, the Probate Court "issued a decree . . . in which it determined that, on the basis of the company's operating agreement . . . [Ferguson] and the decedent's estate were equal owners of the company, each holding a 50 percent interest."[5] *Moore* v. *Ferguson*, 232 Conn. App. 797, 799,      A.3d (2025).

On June 4, 2021, the defendant filed a petition with the Probate Court to remove the plaintiff as executor of the estate. In the petition,[6] the defendant asserted that the plaintiff should be removed as executor due

[5] In addition to engaging in various other litigation relating to the estate, the plaintiff appealed to the Superior Court from the Probate Court's decree determining the ownership interests in the company. See *Moore* v. *Ferguson*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-23-5027938-S. The plaintiff's appeal in that matter was dismissed on May 1, 2023, for lack of standing, and this court affirmed the judgment of dismissal. See *Moore* v. *Ferguson*, 232 Conn. App. 797, 809,      A.3d      (2025).

[6] In the defendant's June 4, 2021 petition, she also renewed arguments made in a prior petition she had filed to remove the plaintiff as executor. That prior petition set forth claims that the plaintiff should be removed as executor because he (1) failed to file a timely inventory for the estate, (2) failed to timely request and obtain an extension for the filing of the estate's tax return, (3) fired counsel retained by the estate to litigate Ferguson's claimed interest in the company, (4) claimed an ownership interest in the company, (5) failed to make a timely mortgage payment for the property and (6) refused to communicate with the defendant about the estate. The defendant claimed that, based on that conduct, the plaintiff had (1) "failed to fulfill his fiduciary duty . . . [and] to make necessary court filings," (2) "not kept the [defendant], a beneficiary, updated and aware of his activities in connection with the estate, and has acted rashly in [regard] to the estate's litigation," (3) "shown a clear misunderstanding of how to act in the estate's interest and a disregard for the decedent's testamentary wishes," and (4) "a conflict of interest and cannot continue as executor" based on his claimed ownership interest in the company. In the prior petition, the defendant also requested that "any powers" granted to the plaintiff under the will concerning the management of the company's "business affairs" be voided. The Probate Court denied the prior petition without prejudice.

to issues relating to his (1) failure to complete an estate accounting and comply with a court order concerning the accounting, (2) self-dealing as a tenant of the property, (3) failure to manage the property, (4) failure to communicate with the defendant, (5) conversion of a 2011 Range Rover vehicle owned by the estate to himself, (6) inability to properly administer the estate and follow court orders and (7) misunderstanding of the law. After an evidentiary hearing, the Probate Court issued a decree on February 17, 2022 (decree), removing the plaintiff as executor of the estate. In addition to granting the defendant's petition to remove the plaintiff as executor, the Probate Court appointed Kurt M. Ahlberg, a probate attorney, as administrator of the decedent's estate.[7]

The plaintiff appealed to the Superior Court, pursuant to General Statutes § 45a-186 (b),[8] from the Probate Court's decree removing him as executor of the estate. In the plaintiff's complaint, he sought "a hearing in which the circumstances surrounding the will's drafting and editing can be explored identifying the circumstances that resulted in [the defendant's] submission of the [will admitted to probate], which [the plaintiff] believe[d] [was] fabricated," and requested, inter alia, that the plaintiff be reinstated as executor of the estate. The Superior Court, sitting as a court of probate; see *Connery* v. *Gieske*, 323 Conn. 377, 390, 147 A.3d 94 (2016); conducted a trial de novo on the plaintiff's appeal over the course of five days in May and August, 2023. Thereafter, the court, *Hon. Edward T. Krumeich II*, judge trial referee, issued a corrected memorandum of decision dated October 11, 2023, denying the plaintiff's

---

[7] In the decree, the Probate Court also denied a motion to transfer filed by the plaintiff with the Probate Court, which he has not challenged in this appeal.

[8] General Statutes § 45a-186 (b) provides in relevant part: "Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . ."

appeal. In doing so, the court concluded: "While [the plaintiff] was executor [of the estate], he displayed an inability to administer the estate [and] an unwillingness to comply with court orders and to cooperate with Mary [E.] Hoyt . . . the accountant appointed by the Probate Court to prepare the inventory and accounting [for the estate] that [the plaintiff] failed to prepare. [The plaintiff] failed to cooperate with and follow legal advice given by [the] attorneys he engaged as counsel for the estate. Seven attorneys represented [the plaintiff] [in his capacity] as executor during the less than two years [he] served as executor. [The plaintiff's] conduct demonstrated [that] he lacked the competence, understanding and temperament to continue as executor.[9]

"[The plaintiff] also has serious conflicts of interest with the estate that are irreconcilable with his continuing as executor. [The plaintiff's] [barbershop] business occupied a portion of the property . . . which was the principal asset of the estate, on which he failed to pay rent. [The plaintiff] testified that he had a deal with [the decedent] that he was not obligated to pay rent and could use income from the property to pay the mortgage and for related maintenance and expenses.[10] When [the] Probate [Court] . . . ordered [the plaintiff] to pay \$1500 in monthly rent, [he] failed to do so,

---

[9] "[The plaintiff] blamed the seven attorneys who represented him as executor for [his] failure to marshal estate assets and to obtain [the] financial information needed for an accounting. [The plaintiff] explained [that] the attorneys were not willing to help him. [The plaintiff] testified [that] he fired three of these attorneys, one had a conflict and withdrew, and two resigned. [The plaintiff] needed competent probate counsel to function as executor because he lacked the knowledge and skill to function as fiduciary for the estate. The court acknowledges that some of the delays resulted from the [COVID-19] pandemic, but [the plaintiff's] failures may not be excused for that reason but, rather, reflect his approach, which was motivated to pursue his self-interest over the interests of the estate and its beneficiaries."

[10] "In addition to not paying rent for the barbershop [he operated] at [the property], [the plaintiff] retained the fees paid by other barbers for their chairs at the barbershop. [The plaintiff] also testified that he was not required to pay fees for his barber chair, unlike the other barbers, because he was the manager."

explaining that, because [the probate judge] recused himself in the same order in which he directed the rental payment, [the plaintiff] felt he need not obey the order. [The plaintiff] transferred title to an automobile that was an estate asset to himself without payment to the estate.[11] [The plaintiff] used estate assets and income to support properties in which he had an interest or claimed to have an interest.[12] [The plaintiff] testified [that] he also used his personal funds to support [the] propert[y] and has made claims against the estate for reimbursement. [The plaintiff] also testified that he has an interest in [the company], the main asset of the estate, which he testified [he] was supposed to manage and control in accordance with [the decedent's] wishes as property manager, executor and trustee of a testamentary trust.[13]

"The most egregious conflict of interest, by far, is that [the plaintiff] asserts that he has an interest in

---

[11] "The [automobile owned by the estate that the plaintiff transferred to himself, a] 2011 Range Rover, was valued at $9559 in the interim accounting filed by [the plaintiff]. In an earl[ier] text message, [the defendant] indicated [that] she was willing to give [the plaintiff] the vehicle, but the transfer of title took place after the two were no longer on friendly terms. [The plaintiff] testified [that] he had the power as executor to transfer title to the [vehicle] to himself, even though there was not a specific bequest of the vehicle to him [in the will]."

[12] "[The plaintiff] was bequeathed property [located] at 107A William Street in Bridgeport [in the will]. Rents from the tenant in that property were used by [the plaintiff] to pay [for] expenses and repairs for the property . . . and his barbershop located there. [The plaintiff's] barbershop operates as Metro Hair Station, LLC. [The plaintiff] described the decedent, as a 'partner' in [his] business but did not list this interest as an asset of the estate, which is another potential conflict. [The plaintiff], and/or his [business], were the defendants in a [related] summary process action and have agreed to vacate [the property]. [See *40 Wall Street*, *LLC* v. *Moore*, Superior Court, judicial district of Stamford-Norwalk, Housing Session at Stamford, Docket No. CV-22-6008205-S, appeal dismissed, Connecticut Appellate Court, Docket No. AC 47482 (October 16, 2024).] Being sued by the company, the interest in which is the largest asset of the estate, is another potential conflict."

[13] "[The plaintiff] also testified [that] he was supposed to be a 'member' of [the company], but the court does not believe he understood the term, which he used interchangeably with 'manager.' If he meant that he had a membership interest in [the company], that would be another conflict."

estate assets that are contradictory to the terms of the will admitted to probate under which he was appointed executor. [The plaintiff] testified [that] he went to [the decedent's] house after his death and removed the . . . will . . . from the place where [the decedent] had put it and filed the will with the Bridgeport Probate Court. When there was a problem with 'paperwork' in connection with the filing of the will, according to the [court] clerk, he engaged Attorney Nathaniel W. Shipp to assist him [with] admit[ting] the will [to] probate, hav[ing] [the plaintiff] appointed executor and . . . carry[ing] out his duties as executor. [The plaintiff] testified that he had not seen the will admitted to probate but later learned someone had 'edited' the will from the version he had attempted to file with the Bridgeport Probate Court after [the decedent's] death. According to [the plaintiff], the will had been 'edited' to remove him as residuary beneficiary and to substitute . . . [the defendant], and to omit the testamentary trust for the decedent's two daughters with [the plaintiff] as trustee. [The plaintiff] admitted that he did not know who 'edited' the will, but he identified his then probate attorney . . . Shipp, and [court] clerks at the Probate Court, whom he identified by name, as persons who could be responsible for filing the 'edited' will [that was] later admitted to probate. [The plaintiff] testified the will was filed in substitute to the 'non-edited' . . . will . . . of the decedent that he said named him as principal beneficiary of the estate and trustee of a testamentary trust with [the property] and most other estate assets held in trust and under his control. [The plaintiff] testified that he has filed a 'motion to open' pending in the Probate Court to challenge the admitted will.[14]

"The evidence was clear and convincing that [the plaintiff] consistently acted in his own self-interest

---

[14] "[The plaintiff] also attacked the bona fides of the will in his reply brief. The court has not considered the [identification] exhibits referred to in [the plaintiff's] initial brief."

rather than for the benefit of the [estate] beneficiaries . . . engaged in self-dealing with assets of the estate . . . has irreconcilable conflicts of interest with the estate . . . [and] failed persistently and is unfit to administer the estate effectively. The delays in the administration of the estate were often attributed to [the plaintiff] and his inability to carry out the duties of executor. [The plaintiff] has been unwilling and unable to work with the Probate Court, the attorneys for the estate, the accountant engaged to assist in estate administration, and the principal beneficiary.[15] [The plaintiff] misunderstood his role as fiduciary, would not heed advice from his attorneys or comply with court orders, conflated his personal interests with the interests of the estate and acted primarily out of his self-interest to ensure his personal control of estate assets. [The plaintiff] has acted to undermine the decedent's estate plan expressed in the will and to promote a competing will that benefits him at the expense of the decedent's widow and children. The court finds that the defendant has met her burden of proving that removing [the plaintiff] as executor was required 'to protect against harm caused by the continuing depletion or mismanagement of an estate.' . . . [Emphasis omitted.] [*In re Probate Appeal of McIntyre*, 207 Conn. App. 433, 448, 263 A.3d 925 (2021)].[16]

"[The plaintiff] was properly removed as executor pursuant to [General Statutes] § 45a-242 (a)[17] . . . for

[15] "The court rejects [the plaintiff's] argument that the attorneys [for the estate] and [the defendant] sabotaged his ability to carry out his duties as executor as contrary to credible evidence."

[16] "The court finds the evidence for removal to be clear and convincing and [that it] would meet the heightened standard argued [for] by the plaintiff but states no opinion as to the appropriate burden of proof for removal of a fiduciary."

[17] General Statutes § 45a-242 (a) provides in relevant part: "The Probate Court having jurisdiction may, upon its own motion or upon the petition of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties

neglect to perform the duties of the fiduciary's trust and waste of the estate in his charge and . . . because of his unfitness, unwillingness and persistent failure to administer the estate effectively, and [as a result of] the court's determination that removal of the fiduciary best serves the interests of the [estate's] beneficiaries. This court finds the estate's interests would suffer continuing harm if [the plaintiff] were not removed as fiduciary. [The plaintiff] has mismanaged the estate and has conflicts of interest that render him unfit to continue in the service of the estate. [The plaintiff] was properly removed as executor of the estate." (Footnote added; footnotes in original.) This appeal followed. Additional facts and procedural history are set forth as necessary.

As a preliminary matter, we begin by setting forth the standard of review. "In appeals in which the trial court has ruled on a probate appeal de novo, we treat our scope of review as we would with any other Superior Court proceeding. . . . When the court has made factual findings, we defer to those findings unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . With regard to matters of law, however . . . our review is plenary." (Citations omitted; internal quotation marks omitted.) *Salce* v. *Cardello*, 210 Conn. App. 66, 72–73, 269 A.3d 889 (2022), aff'd, 348 Conn. 90, 301 A.3d 1031 (2023). "Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the Probate Court.

of such fiduciary's trust, wastes the estate in such fiduciary's charge, or fails to furnish any additional or substitute probate bond ordered by the court . . . [or] (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of the beneficiaries . . . ."

. . . On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision.[18] . . . Our task, then, is to determine whether the trial court abused its discretion . . . ." (Footnote added; internal quotation marks omitted.) *Saccu's Appeal from Probate*, 97 Conn. App. 710, 713–14, 905 A.2d 1285 (2006).

I

The plaintiff claims that the Superior Court improperly limited the scope of its review with respect to his probate appeal and, as a result, failed to allow him to present evidence (1) to refute the allegations concerning his alleged misconduct in administering the estate and (2) to challenge the decedent's will that had been admitted to probate. In particular, he asserts that, "although [his probate appeal] was brought to the [Superior Court] as an appeal of the Probate Court's decree removing [him] as executor of the [decedent's] estate, its inquiry, in its role as a court with coextensive jurisdiction [to] the Probate Court and hearing the appeal as a trial de novo, should not have ended there." According to the plaintiff, this resulted in the court's "arriv[ing] at erroneous findings of fact that could have been avoided had the . . . court allowed [him] to present evidence that called into question many of the defendant's allegation[s] relative to [his] alleged misconduct

[18] "As to the order or decree appealed from, the jurisdiction of the Superior Court is coextensive with that of the Probate Court in the first instance. [I]f a de novo trial which will be fully effective is to be granted in the [S]uperior [C]ourt on appeal from a probate decree, the [S]uperior [C]ourt must logically be given the same power as the [P]robate [C]ourt itself had, including any discretionary power. In other words, after consideration of all evidence presented on the appeal which would have been admissible in the [P]robate [C]ourt, the [S]uperior [C]ourt should exercise the same power of judgment which the [P]robate [C]ourt possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." (Internal quotation marks omitted.) *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 54–55, 534 A.2d 1223 (1987).

in his attempts to administer the estate, including the admission of the . . . will [to] probate in the first place." We disagree that the Superior Court improperly limited the scope of its review and decline to review the remaining portion of the plaintiff's claim.

"An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court. . . .

"The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the [P]robate [C]ourt, the [S]uperior [C]ourt should exercise the same power of judgment which the [P]robate [C]ourt possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt." (Internal quotation marks omitted.) *Wolfel* v. *Wolfel*, 218 Conn. App. 760, 766–67, 292 A.3d 1261, cert. denied, 348 Conn. 902, 301 A.3d 528 (2023).

"[A] probate appeal . . . brings to the Superior Court *only* the order appealed from. The order remains intact until modified by a judgment of the Superior Court after a hearing de novo on the issues presented for review by the reasons of appeal. . . . The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. . . . The Superior Court, therefore, cannot enlarge the scope of the appeal." (Emphasis

in original; internal quotation marks omitted.) *In re Probate Appeal of McIntyre*, supra, 207 Conn. App. 440.

In the present case, therefore, the Superior Court had jurisdiction over only the matter that was appealed by the plaintiff, namely, the Probate Court decree removing him as the executor of the decedent's estate. To the extent that the plaintiff contends on appeal that the Superior Court was not limited in that respect, the claim lacks merit. The plaintiff confuses the nature of the de novo proceeding before the Superior Court. Although the Superior Court, in an appeal from a decree of the Probate court, must conduct a trial de novo and decide the appeal on the basis of the evidence presented, unrestrained by the Probate Court's decision, that does not mean that a Superior Court can decide matters beyond what has been appealed. On the contrary, case law is clear that "[a] probate appeal . . . brings to the Superior Court *only* the order appealed from." (Emphasis in original; internal quotation marks omitted.) Id.

In connection with this claim, the plaintiff also asserts that the court improperly precluded him from presenting evidence to refute the allegations concerning his alleged misconduct in administering the estate and to challenge the decedent's will that had been admitted to probate. We decline to review this claim. "As our Supreme Court recently has stated, it is the responsibility of parties, not an appellate court, 'to clearly identify how and where in the record the claim that the party is raising on appeal was preserved for review and *where in the record the trial court's ruling on the claim may be found* . . . .' " (Emphasis in original.) *State ex rel. Dunn* v. *Burton*, 229 Conn. App. 267, 294, 327 A.3d 982 (2024), quoting *Dur-A-Flex, Inc.* v. *Dy*, 349 Conn. 513, 589–90, 321 A.3d 295 (2024); see also *Aspiazu* v. *Orgera*, 205 Conn. 623, 636–37 n.5, 535 A.2d 338 (1987) ("[w]hen raising evidentiary issues on appeal, all briefs should

identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error").

Although the plaintiff asserts that the court improperly precluded him from presenting certain evidence, which resulted in the court's making erroneous factual findings, he does not identify any particular evidentiary ruling made by the court with respect to this claim. He also has not identified the specific erroneous factual findings that followed. In all, his appellate briefing on this aspect of his claim consists of a single short paragraph, without citation to relevant authority regarding evidentiary rulings on the admission of evidence. Thus, in light of the plaintiff's failure "to clearly identify . . . where in the record the trial court's ruling on the claim may be found"; (emphasis omitted; internal quotation marks omitted) *State ex rel. Dunn* v. *Burton*, supra, 229 Conn. App. 294; and because he has not adequately briefed this claim; see, e.g., *Wells Fargo Bank*, *N.A.* v. *Bissonnette*, 232 Conn. App. 501, 519, 337 A.3d 1 (declining to review claim as inadequately briefed when totality of discussion of claim was contained in one short paragraph that was devoid of any legal citations or analysis), cert. denied, 352 Conn. 910, 336 A.3d 84 (2025); we decline to review this claim. See also *Murthy* v. *Missouri*, 603 U.S. 43, 67 n.7, 144 S. Ct. 1972, 219 L. Ed. 2d 604 (2024) ("[j]udges are not like pigs, hunting for truffles buried [in the record]" (internal quotation marks omitted)); *State* v. *Tocco*, 120 Conn. App. 768, 786–87, 993 A.2d 989 ("this court is not an advocate for any party; it would be beyond the proper role of this court in resolving the issues raised on appeal to sift through the voluminous record before us and speculate as to the specific evidence at issue in the present claim"), cert. denied, 297 Conn. 917, 996 A.2d 279 (2010).

## II

The plaintiff's next claim is that the Superior Court committed plain error[19] by failing to overrule the Probate Court's admission of the will into probate despite "obvious and facial defects in the will" and an accompanying Probate Court form, PC-200.[20] The plaintiff asserts that this resulted in a manifest injustice to him and "the integrity of the entire estate administration process . . . being compromised." In support of this claim, the plaintiff states that the decree of the Probate Court admitting the will to probate was based on clearly erroneous factual findings, and he identifies numerous purported deficiencies in the will and the PC-200 form. We reject this claim because the plaintiff's probate appeal was taken from the decree of the Probate Court removing him as executor of the estate, not from the decree of the Probate Court admitting the will to probate. Consequently, any claims pertaining to the admission of the will to probate were beyond the scope of what was before the Superior Court on appeal.

The contours of the Superior Court's jurisdiction over an appeal from a decree of the Probate Court are well

---

[19] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such magnitude exists, it necessitates reversal. . . . [I]t is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Citations omitted; internal quotation marks omitted.) *State* v. *Kyle A.*, 348 Conn. 437, 445, 307 A.3d 249 (2024).

[20] Probate Court form PC-200 is titled " 'Petition/Administration or Probate of Will,' and contains an instruction that '[a]ny person may use this form to petition the court for administration or probate of a will and the appointment of an administrator or executor.' " *Vecchiarino* v. *Potter*, 223 Conn. App. 676, 688, 309 A.3d 322, cert. denied, 349 Conn. 906, 313 A.3d 511 (2024).

established. "In a probate appeal . . . the Superior Court's jurisdiction is statutory and *limited to the order appeal from. . . . The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked.* This is so even with the consent of the parties to the appeal because *the court has subject matter jurisdiction limited only to the order or decree appealed from. . . .* [The Superior Court] tries the questions presented to it de novo, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate." (Citation omitted; emphasis added; internal quotation marks omitted.) *Eder's Appeal from Probate*, 177 Conn. App. 163, 168–69, 171 A.3d 506 (2017). Simply put, it has long been a key principle of our jurisprudence that a probate appeal "brings to the Superior Court *only* the order [or decree] appealed from. . . . The Superior Court, therefore, cannot enlarge the scope of the appeal." (Citations omitted; emphasis in original.) *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 54, 534 A.2d 1223 (1987); see also *Stevens' Appeal*, 157 Conn. 576, 581, 255 A.2d 632 (1969).

In the present case, the plaintiff's complaint states that he is appealing the "February 17, 2022 . . . [d]ecree granting a motion filed by the defendant . . . removing [him] from [his] role as executor" of the estate. The plaintiff did not appeal from the April 9, 2020 decree of the Probate Court admitting the will to probate. As we have stated, the Superior Court cannot "enlarge the scope of the appeal." *Silverstein's Appeal from Probate*, supra, 13 Conn. App. 54; see also *Marshall v. Marshall*, 71 Conn. App. 565, 571, 803 A.2d 919 (concluding that Superior Court was without jurisdiction to consider "issue of whether counsel committed misconduct," as "the plaintiff appealed from the admission of the will to probate and the approval of the defendant

as executrix" and, thus, issue of whether counsel committed misconduct went beyond scope of "the decree attacked in the appeal"), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002); see also *In re Probate Appeal of McIntyre*, supra, 207 Conn. App. 439–40.

Because the Superior Court could not have "overruled" or reviewed the merits of a Probate Court decree that was not properly before it on appeal, the plaintiff's claim of plain error fails.

### III

The plaintiff's next claim is that the court abused its discretion by preventing him from introducing evidence challenging the authenticity of the will. Specifically, he argues that the court abused its discretion when it "quashed the subpoenas of key witnesses who possessed direct knowledge of the circumstances surrounding the execution and filing of the will."[21] To the extent that this claim involves a challenge to the admission of the decedent's will to probate, it fails for the reasons stated in part II of this opinion. To the extent that we construe the claim as a challenge to the court's rulings quashing subpoenas, we conclude that the plaintiff has abandoned this claim due to inadequate briefing and decline to review it.

The following additional facts and procedural history are relevant to this claim. Prior to the commencement of trial, the plaintiff subpoenaed several nonparties, including Diane Ely, Stephanie Bergamo and Libby

---

[21] The plaintiff also argues, for the first time in his appellate reply brief, that the court abused its discretion when it denied his request for Hoyt, the accountant appointed by the Probate Court to prepare an inventory and accounting of the estate, "to email copies of her records or to bring [certain] files with her to [court] the following day . . . ." We decline to review this claim given the "well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Dearing* v. *Commissioner of Correction*, 230 Conn. App. 145, 168 n.9, 329 A.3d 988, cert. denied, 351 Conn. 910, 331 A.3d 158 (2025).

Scott, staff members of the Probate Court; Christine D. Benham, the attorney who prepared the will; Michael W. Benham and Teresa Carasone, the witnesses to the will's execution; and Ferguson. Three motions to quash were subsequently filed on behalf of these nonparties, one for the three Probate Court staff members (probate staff motion), another for the individuals involved in the preparation and execution of the will (Benham motion) and one as to Ferguson (Ferguson motion).[22] Ultimately, the court quashed the subpoenas as to the aforementioned nonparties.[23]

"[O]ur appellate courts repeatedly have recognized that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised

[22] It is unclear whether the plaintiff on appeal is challenging the court's quashing of the subpoena targeting Ferguson. Although the plaintiff, in his principal appellate brief, cites to the court's order granting the Ferguson motion, nowhere in his appellate briefing on this claim does the plaintiff specifically argue that the court abused its discretion by granting the Ferguson motion nor does he explain why such ruling constituted an abuse of discretion. As a consequence, any challenge by the plaintiff to the court's quashing of the subpoena targeting Ferguson is deemed abandoned. See *State* v. *Wright*, 76 Conn. App. 91, 94 n.1, 818 A.2d 824 (2003) ("[c]laims not briefed are deemed abandoned"), cert. denied, 267 Conn. 911, 840 A.2d 1175 (2004).

[23] The court granted the probate staff motion on the ground that "[t]he jurisdiction on this probate appeal is limited to the decree on appeal, [and] [n]o proper purpose would be served by permitting the deposition of Probate Court staff." It granted the Ferguson motion because, "on the narrow issue before [the court], which is the removal of [the plaintiff] as executor," it did not view Ferguson's testimony as "material . . . to this trial." The court initially granted the Benham motion in part only as to Michael W. Benham and Carasone because it determined that those "witnesses [were] not material to the removal of the executor." Later in the proceedings, however, the court also granted the Benham motion as to Christine D. Benham because, "[b]ased on an offer of proof at trial, the court . . . deemed the witness [was] not material to the issue of the removal of the executor; at best, information that the witness may have . . . [was deemed] cumulative."

on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims."[24] (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 133, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014).

We do not reach the merits of the plaintiff's claims as to the Benham motion and the probate staff motion because we deem those claims abandoned due to inadequate briefing. The plaintiff's appellate briefing on this issue is completely devoid of any citation to legal authority or substantive legal analysis. The plaintiff's principal appellate brief contains five paragraphs discussing this issue, four of which are only one sentence long. None of these five paragraphs includes a single citation to any form of legal authority. Moreover, the brief does not set forth the standard of review concerning a trial court's granting of a motion to quash, nor does it include relevant case law setting forth the legal principles that apply to such a claim. The brief is also completely bereft of any legal analysis discussing similar precedent or applying pertinent legal principles to

---

[24] In applying this principle, this court has held that briefing that is devoid of any substantive legal analysis is inadequate. See, e.g., *Lafferty* v. *Jones*, 229 Conn. App. 487, 511 n.26, 327 A.3d 941 (2024) (deeming two claims abandoned due to lack of "any substantive legal analysis"), cert. denied, 351 Conn. 923, 333 A.3d 105 (2025), and cert. denied, 351 Conn. 923, 333 A.3d 106 (2025); *In re Olivia W.*, 223 Conn. App. 173, 198, 308 A.3d 571 (2024) (deeming claim abandoned based on "fail[ure] to present any substantive legal analysis addressing the court's reasoning"); see also *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87 n.28, 942 A.2d 345 (2008); *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 776 n.10, 882 A.2d 653 (2005).

the facts of this case. The plaintiff's appellate reply brief is similarly deficient in that its discussion of this issue contains no citations to legal authority or substantive legal analysis whatsoever.[25]

Accordingly, we deem the plaintiff's claims concerning the court's rulings on the Benham motion and probate staff motion to be abandoned due to inadequate briefing.

## IV

The plaintiff's final claim on appeal is that the court abused its discretion by holding him responsible for the failures of the attorneys he had retained on behalf of the estate to assist with the administration of the estate. According to the plaintiff, he had been ordered by the Probate Court to perform certain tasks by dead-

[25] See, e.g., *Barros* v. *Barros*, 309 Conn. 499, 503 n.4, 72 A.3d 367 (2013) (deeming claims abandoned because appellant "failed to provide any legal analysis" to support them); *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 51 n.23, 861 A.2d 473 (2004) ("[i]nasmuch as the plaintiffs' briefing of the . . . issue constitutes an abstract assertion completely devoid of citation to legal authority or the appropriate standard of review, we exercise our discretion to decline to review this claim as inadequately briefed"); *Jalbert* v. *Mulligan*, supra, 153 Conn. App. 133 ("The defendant's appellate brief fails to cite to any legal authority in regard to these claims. . . . As a result, the defendant has not adequately briefed those issues."); *Marlow* v. *Starkweather*, 113 Conn. App. 469, 472–73, 966 A.2d 770 (2009) ("[t]he plaintiff's brief is devoid of any legal analysis . . . accordingly, we cannot reach the merits of his claims and deem them abandoned"); *Rock Rimmon Grange #142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 112 Conn. App. 1, 8, 961 A.2d 1012 (2009) (appellant's claims were "devoid of any legal analysis or citation to legal authority" and thus abandoned); *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005) ("[w]e cannot reach the merits of the defendants' claims because their brief is devoid of any legal analysis and, therefore, we deem their claims abandoned"); *Trappe* v. *Bolgard*, 80 Conn. App. 384, 385, 835 A.2d 115 (2003) ("we simply cannot consider a claim when the plaintiff has provided the court with what amounts to a one page brief that is devoid of any legal authority for or analysis of her claim"); *Hill* v. *Bartels*, 73 Conn. App. 588, 589, 808 A.2d 1176 (2002) (deeming claims abandoned when appellant "cite[d] no legal authority to support" them).

lines set by the court, including completing an inventory of the property of the decedent, filing a tax return for the estate, and settling the estate. He contends that he engaged the services of a number of attorneys to assist in completing those tasks but that those attorneys either were unable or unwilling to do the necessary work to complete the tasks and that he was left alone, as a layperson, to obtain the necessary information. He asserts that, "[a]t all times during the administration of the estate for which [he] was responsible, he was denied access to any of the sources of information necessary to comply with" the orders of the Probate Court. We decline to review this claim.

Aside from setting forth these assertions, the plaintiff has not cited any legal authority or provided any legal analysis in support of this claim. As we already have stated in this opinion, "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, supra, 153 Conn. App. 133.

Even if we were to review this claim, we would conclude, nonetheless, that it fails. In its memorandum of decision, the Superior Court found that, although "[the plaintiff] was executor, he displayed an inability to

administer the estate, an unwillingness to comply with court orders and to cooperate with . . . Hoyt . . . the accountant appointed by the Probate Court to prepare the inventory and accounting that [the plaintiff] failed to prepare. [The plaintiff] failed to cooperate with and follow legal advice given by attorneys he engaged as counsel for the estate. Seven attorneys represented [the plaintiff] as executor during the less than two years [he] served as executor. [The plaintiff's] conduct demonstrated [that] he lacked the competence, understanding and temperament to continue as executor." The court further found that "[the plaintiff] blamed the seven attorneys who represented him as executor for [his] failure to marshal estate assets and to obtain financial information needed for an accounting. [The plaintiff] explained [that] the attorneys were not willing to help him. [The plaintiff] testified [that] he fired three of these attorneys, one had a conflict and withdrew, and two resigned. [The plaintiff] needed competent probate counsel to function as executor because he lacked the knowledge and skill to function as fiduciary for the estate. The court acknowledges that some of the delays resulted from the [COVID-19] pandemic, but [the plaintiff's] failures may not be excused for that reason but, rather, reflect his approach, which was motivated to pursue his self-interest over the interests of the estate and its beneficiaries."[26] Those findings are supported by the record.

---

[26] Our Supreme Court has explained that "[a]n important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the estate. . . . [O]ne interested in an estate has the right to have its representative wholly free from conflicting personal interests . . . . When the executor of an estate places itself in a position where its interests conflict with those of the estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. When [such] a situation appears . . . it is the positive duty of the court to remove the executor . . . ." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 454, 165 A.3d 1137 (2017).

For example, the court's finding that, during his tenure as executor, the plaintiff acted improperly and against the interests of the estate in various ways was supported, in part, by its finding that the plaintiff used his powers as executor to transfer an asset owned by the estate, a 2011 Range Rover valued at $9559, to himself without making any payment to the estate, despite the lack of any such bequest in the will. It also was supported by the court's finding that the plaintiff had disobeyed various court orders, including orders to pay rent monthly to the company for his tenancy at the property and to provide Hoyt with the records necessary to complete the estate accounting, and that he "used estate assets" and diverted from the estate rental income that was owed to it and, instead, used that income "to support" a property in Bridgeport that was bequeathed to him in the will.

Furthermore, the court's finding that the plaintiff had retained seven attorneys in two years to assist him with fulfilling his duties as executor, but still failed to do so, along with Hoyt's testimony describing the estate as a "[v]ery simple" one, supports the court's conclusion that the plaintiff was responsible for his failure to perform his duties as executor. The plaintiff's argument to the contrary—that he was hamstrung as executor by the attorneys he hired—is unavailing in light of the court's finding that the plaintiff also failed to cooperate with Hoyt. The Probate Court ordered the plaintiff to provide Hoyt with the records necessary to complete an accounting for the estate after he had failed to do the same, but he never complied with the order. The fact that the plaintiff was unable or unwilling to obtain those records for Hoyt and to work effectively with any of the attorneys he retained supports the court's determination that he was unfit to administer the estate

because he lacked the "knowledge and skill" to fulfill his duties as executor without the assistance of counsel.[27]

The judgment is affirmed.

In this opinion the other judges concurred.

———————————————

[27] We also note that, in asserting this claim, the plaintiff disregards the fact that the court's determination that his removal as executor was necessary to prevent continuing harm to the estate was based on a number of findings, some of which are unrelated to whether the plaintiff completed the tasks he was obligated to perform as executor. Those findings included that the plaintiff "consistently acted in his own self-interest rather than for the benefit of the [estate] beneficiaries . . . engaged in self-dealing with assets of the estate . . . ha[d] irreconcilable conflicts of interest with the estate . . . conflated his personal interests with the interests of the estate . . . acted primarily out of . . . self-interest to ensure his personal control of estate assets . . . [and] . . . acted to undermine the decedent's estate plan . . . and to promote a competing will that benefits him at the expense of the decedent's widow and children." See General Statutes § 45a-242 (a) (1) and (3). On appeal, the plaintiff has not challenged any of those findings, which, by themselves, support the court's judgment.